PATRICK O'RILEY, Respondent, v. NELSON McCHESNEY, Appellant.

(GENERAL TERM, THIRD DEPARTMENT, OCTOBER, 1870.)

Where the defendant, the owner of a flax-mill upon a natural stream, permitted flax shives to float down the current, and they accumulated a deposit in, and impaired the use of, the plaintiff's mill-pond,—*Held*, that the expense of removing the deposit was a direct consequence of the injury caused, and that the plaintiff could recover the same in an action against the defendant, although the deposit had not been removed.

*Held*, further, that it was not a reasonable or an ordinary use of the defendant's water privilege to allow the shives to pass down stream, and that he was liable to the plaintiff even if the latter might have remedied the evil by a different construction of his dam; and that the plaintiff was entitled to such remuneration as would restore his privileges to their former condition.

THIS was an appeal from a judgment entered on the verdict of a jury rendered at the Rensselaer June circuit, 1869, and from an order denying a new trial.

The action was for damages caused by an accumulation of flax shives in plaintiff's mill-pond, thrown into the stream by defendant, and causing an obstruction and deposit therein. The plaintiff owned and operated a grist-mill on the Tomhannock creek, in the town of Pittstown, Rensselaer county. The defendant owned and conducted a flax-mill a short distance, about 400 feet, above, and was in the habit of throwing the shives and refuse matter from his mill into the stream. These shives settled into the pond of the plaintiff creating a bar 150 feet long and of different depths. Much evidence was given upon the issue, whether flax shives would sink in water, and as to the extent of the bar, and the materials of which it was composed.

The defendant insisted, on the trial, that it was plaintiff's duty to remove the shives and bar by the operation of a waste-gate. It was shown that the plaintiff bought this mill and dam in 1858; that the defendant erected his flax-mill in 1863; and that the dam of the plaintiff was constructed of large cribs

filled with stone, in which a waste-gate for the removal of sediment in the pond could not be maintained.

There was some testimony to show that these shives, besides forming the bar, prevented cattle from watering in the stream, and filled up the trunks connected with the mill.

Requests were made to charge and questions are raised as to the charge and the refusals to charge, which are sufficiently stated in the opinion.

The jury found a verdict in favor of the plaintiff of $500. The defendant moved for a new trial, which was denied.

An appeal was taken from the judgment entered on the verdict, and the order denying a new trial.

*J. H. Reynolds*, for the appellant.

*Miles Beach*, for the respondent.

Present—MILLER, P. J., POTTER and PARKER, JJ.

MILLER, P. J.  This action was brought to recover damages sustained by the plaintiff by reason of the defendant's throwing shives and the refuse matter of his flax-mill in the stream upon which it was located, and thereby causing injury to the plaintiff, who was the owner of a grist-mill upon the same stream a short distance below the defendant's flax-mill.  There was evidence to show that the shives settled in the pond of the plaintiff, forming a bar which it was claimed caused an obstruction and filled up the dam.  There was also some evidence to prove that cattle would not drink in the stream in consequence of the shives being there.

It is insisted by the defendant's counsel that it appeared that the top of the alleged bar or deposit was lower than the point over which water from the plaintiff's pond would pass into his flume, and that it is impossible that this deposit could have caused the plaintiff any injury, and he was not entitled to recover, and the judge erred in not so instructing the jury. The judge was requested to charge that if there was sediment at any part of the pond which lies below a point over which the

water would run into the flume, that this did not affect the plaintiff injuriously. To this request the judge responded: "If you have done nothing which injures the party in that way, nor deprives him of the actual use of the water, then you have not damaged him." A colloquy then followed between the court and the counsel, in which the court substantially stated, that if the deposit did not affect the use of the dam that the plaintiff was not entitled to recover nor to have it removed. No exception was taken to the charge in this respect, which appears to have been favorable to the views of the defendant.

The court was afterward asked to charge, that if the verdict should be for the plaintiff it should be only for nominal damages; and at the close of a long series of requests and responses from the court, a general exception was taken to the refusals to charge. Assuming that the point is sufficiently raised, the distinct question arises whether the facts presented entitled the plaintiff to recover only nominal damages. The court had previously charged, that if the dam was filled up by foreign material, it was plain that the plaintiff could not use it for the purposes for which the pond was constructed; that the plaintiff had a right to get rid of it at the defendant's expense if it came there through the defendant; and the question was, what sum was reasonable and necessary in getting the deposits out of the pond, so that it could be used as it was originally designed? The argument of the defendant is, that the plaintiff was not entitled to damages for removing and excavating until it was done, and therefore the jury were misdirected and misled, even if the plaintiff had technically sustained his action.

The question of damages is frequently embarrassing and difficult of solution. The general rule is, that damages, to be recovered, must always be the natural and proximate consequence of the act complained of. (2 Green. Ev., § 256; *Armstrong* v. *Percy*, 5 Wend., 535; *Lowner* v. *Madison County Bank*, 6 Hill, 648.) It is often troublesome to apply this rule to practice in all cases, as the line of demarkation

between damages which are natural and direct and those which are remote and contingent is very close. The expense of removing the deposits which it was claimed caused the injury complained of, was, it seems to me, a direct consequence of the injury; and the fact that it had not been incurred does not, I think, prevent a recovery for this portion of the damages. It is enough, it seems to me, that it was necessary to be done to restore the property to its former condition; and as there was evidence to establish the expense of removing the deposits made, it was a proper subject for the consideration of the jury. Suppose a building is injured and partially torn down by an unlawful act or trespass, is the party injured obliged to wait until he has repaired the damages before he can recover? Clearly not; and it is enough to maintain his action, that to this extent, his property is diminished in value. In an action brought to recover damages for injuries to plaintiff's barn, &c., by water, alleged to have been turned on to his land by the defendant, the rule of damages was held to be the difference in value between the premises before the injury happened and afterward. (*Chase* v. *N. Y. C. R. R. Co.*, 24 Barb., 273.) See also, *Walrath* v. *Redfield* (11 Barb., 368), where the same rule was applied in an action to recover damages to property, for causing the water to flow back on the same. The expense required to remove the obstruction in plaintiff's pond, was proper evidence of the diminished value of his property by reason of the injury. Therefore, this was not a case for nominal damages, and the judge properly refused to charge as requested. It may be added, that there were also other elements of damages, such as the effect of the shives upon the cattle in drinking, and the filling in, at high water, of the trunks leading from the pond to the mill. It was enough, however, that it reduced the value of the property, and the plaintiff was entitled to full indemnity from the defendant for this alone.

It is also claimed by the defendant's counsel, that it was but a reasonable and ordinary use of his water privileges, for

O'Riley *v.* McChesney.

the defendant to permit the shives to pass down the stream, the same as saw dust from a saw-mill, or the like, and, therefore, the action was not maintained. The rule is well established, that every proprietor of lands on the banks of a natural stream has a right to use the water, provided he so uses it as not to work any material injury to the rights of other proprietors above, or below, on the stream. (*Sampson* v. *Hoddinnott*, 38 Eng. L. & Eq., 241; *Embry* v. *Owen*, 6 Exch., 353; 4 Eng. Rep., 466.) The right of the owner of lands to the enjoyment thereof is qualified by the rights of others; and while he is authorized to pursue any lawful trade thereon, he cannot create a nuisance to the premises of another, and is liable for an injury, even if the act itself be lawful. (*Hay* v. *The Cohoes Co.*, 2 N. Y., 159; *Tremain* v. *The Same*, id., 163.)

It has been held, that the owners of tanneries are liable for injuries caused by tan-bark thrown into the stream, although no injury was intended. (*Thomas* v. *Brockway*, 17 Barb., 654; *Hansee* v. *Hammond*, 39 id., 89.)

Within the principle of the cases cited, I think that the use of the stream for the purpose of throwing in the shives, to the injury of the plaintiff, was not justified. It was an unreasonable appropriation of it to the detriment of the proprietor below, and was not a mere incident to the defendant's situation as a mill owner on the same stream. The cases to which we have been referred to sustain the position of the defendant's counsel, do not go to the extent claimed, or in any way interfere with the principle adverted to. (See 28 Vermont, 459; 25 Conn., 321; 13 Metcalf, 156.)

Even if it be conceded, that the inconvenience could have been remedied by the plaintiff in the construction of his dam, which is perhaps doubtful, yet the injury having occurred by the deposit of the shives, the plaintiff was entitled to such remuneration as would restore his privilege to its former condition. He had a right to have his mill-pond placed in as favorable a state as it was in, prior to the time when the damages occurred.

The judgment must be affirmed with costs.    Judgment affirmed.