# Cases

# FOURTH DEPARTMENT

AT

# GENERAL TERM,

## December, 1876.

---

JOSIAH B. PRENTICE, Respondent, *v.* ELIAS H. GEIGER, Appellant.

*Riparian proprietor — Mill owner — rights of, as to use of stream by mill owners above — Right of user acquired by time — extent of.*

This action was brought by the plaintiff, the owner of a saw-mill to recover the damages occasioned by the filling up of his dam by sawdust and rubbish, deposited in the stream by the defendant at his saw-mill which was situated higher up on the same stream. Upon the trial defendant claimed that he had a right to allow his sawdust and rubbish to float down the stream, and that he was not responsible for the damages occasioned thereby. *Held*, that it was properly left to the jury, to decide whether or not the use made by the defendant of the stream was, under all the circumstances, a reasonable and proper one.

Where a right to use the water of a stream in a particular manner has been acquired by prescription, such right is measured by the extent of the previous enjoyment, and the mode and manner of the user cannot be materially varied to the injury of others, unless the use, as changed, has been continued for a period of twenty years.

The defendant's mill had been in use for about thirty years; during the first twenty years water power, and during the last ten steam power was used therein. Upon the trial evidence was given tending to show that when run by water power it was only used when the water was high, at which times the sawdust and rubbish was carried over the plaintiff's dam and occasioned no injury thereto, but that when used as a steam mill it was run when the water was low, and that then the sawdust and rubbish settled to the bottom of and injured the plaintiff's dam. *Held*, that it was properly left to the jury to decide whether there had not been a material change in the use of the water, which resulted in damage to the plaintiff.

APPEAL from a judgment in favor of the plaintiff entered upon the verdict of a jury, in an action brought for the recovery of damages occasioned to plaintiff's mill by refuse, sawdust, etc., thrown in the stream by defendant, a mill owner higher up on the same stream.

*James Wood,* for the appellant. The change of the plaintiff's water mill to a steam mill. does not change the rule of law in reference to his right to throw the sawdust into the stream. (*Palmer* v. *Mulligan,* 3 Caines, 307 [marg. note]; opinion of Spencer, 311, 312; Livingston, 313, 314; *Radcliff* v. *Mayor, etc.,* 4 Comstock, 203; *Thomas* v. *Brackney,* 17 Barb., 654; *Carhart* v. *Gas-light Co.,* 22 id., 308.) The defendant had a right to throw or deposit his sawdust in the stream of the creek, as from the evidence in the case it appears that he did do. (*Belknapp* v. *Tremble,* 3 Paige, 605; *Smith* v. *Adams,* 6 id, 435; Washburn on Easements, * 281, § 41; *Hammond* v. *Zehner,* 30 N. Y., 118; Ang. on Water Courses, chap. 6, §§ 204, 205–208, 209; *Townsend* v. *McDonald,* 14 Barb., 460; 3 Kent's Com., 440; Washburn on Easements,* 282; *Murgatroid* v. *Robinson,* 8 Ellis & B., 391; *Ingraham* v. *Hutchinson,* 2 Comst., 591.)

*Chas. J. Bissell,* for the respondent. A riparian proprietor has no right to so use the stream, as to work injury to the other proprietors upon the same stream; and if his use of the same does produce injury to another proprietor it is a question of fact for the jury to pass upon whether, under the circumstances, the use was a reasonable one. (*O'Riley* v. *McChesney,* 3 Lans., 278; *Hay* v. *The Cohoes Co.,* 2 N. Y., 159; *Tremain* v. *The Same,* id., 163; *Thomas* v. *Brackney,* 17 Barb., 654; *Honsee* v. *Hammond,* 39 id., 89; *Sampson* v. *Hoddinnott,* 38 Eng. L. and Eq., 241; *Merritt* v. *Brinkerhoff,* 17 Johns., 306; *Pollitt* v. *Long,* 58 Barb., 20.) The defendant's right to pollute the stream with sawdust, is measured by the actual enjoyment of the right during the prescribed period, and it cannot be used in a different, more injurious or more extensive manner. The right acquired will be commensurate in character and extent with the right enjoyed. (*Crowley* v. *Lightowler,* L. R., 2 Ch. App., 478; *McCallum* v. *The Germantown Water Co.,* 54 Penn. St., 40; *Crosby* v. *Bessey,* 49 Maine, 539; *Manly* v. *Shults,* 29 N. Y., 346; Ang. on Water Courses [6th ed.], 397,

§ 224, note 1, and many cases there cited ; *Shutt* v. *Bovingdon,* 5 Esp., 56 ; *Cotton* v. *Pocassett Manufacturing Co.,* 13 Metc., 429 ; *Russell* v. *Scott,* 9 Cow., 279 ; *Baldwin* v. *Calkins,* 10 Wend., 169.)

TALCOTT, J. :

This is an appeal from a judgment entered on a verdict at the Livingston Circuit. There appeared to be several exceptions to rulings on the trial, whereby evidence was admitted or rejected, but none of these are now insisted upon. On this appeal the appellant confines himself to an attempt to show errors in the charge, and in the refusal to charge various propositions. The plaintiff and defendant both occupy saw-mills on Sugar creek, in the town of Ossian, in Livingston county, the mill of the plaintiff being situated about a quarter of a mile down stream from the mill of the defendant, and the action is brought by the plaintiff to recover damages for the befouling the stream by the defendant, by casting into it large quantities of sawdust and other refuse, whereby the dam attached to the plaintiff's mill was choked and filled up, so that his water power was greatly diminished. The defendant and his predecessors have occupied the upper mill as a saw mill for about thirty years. It was originally, and for many years used and run as a water mill, but within the last ten years or thereabouts it has been changed into a steam mill. From the commencement the defendant and his predecessors in the occupation of the upper mill have been accustomed to cast the sawdust and other refuse into the stream, but the mill during that period was only used for a few weeks in the spring and fall, during the time of high water, and when the dust from the mill now occupied by the defendant, and other mills above, as the evidence tended to show, would be carried over the plaintiff's dam ; whereas since the defendant's mill has been operated by steam power it runs nearly all the year, and during periods when the water in the creek is too low to float the dust and debris over the plaintiff's dam, and as the evidence tended to show, the sawdust and refuse being detained in the plaintiff's dam by the lowness of the water, becomes water-logged and sinks to the bottom, and accumulates in large quantities, filling up the plaintiff's dam.

These are the facts, in substance, which the evidence tended to establish, and upon these facts arise the various propositions embraced in the motion for nonsuit, in the charge, and in the defendant's requests to charge.

The defendant moved for a nonsuit, first, upon the ground that he had a right to allow his sawdust and other rubbish to float down the stream, and that if it should work an injury to any of the lower proprietors they were remediless, as that was the ordinary use of water privileges.

A riparian proprietor, it is true, may use the streams along his own premises for reasonable purposes, having regard to the rights of other riparian owners above and below, but he has no right to use the stream in such a manner as to prevent or seriously impair the use of it by others, who are also riparian proprietors upon the same stream. He cannot, by casting matter into the stream, obstruct or divert it, so as to prevent the other owners from using it in a reasonable and proper manner. (*Hay* v. *The Cohoes Co.*, 2 N. Y., 159; *O'Riley* v. *McChesney*, 3 Lans., 278; *Merritt* v. *Brinkerhoff*, 17 Johns., 306.) Whether the use of the stream in the manner in which it was used by the defendant was a reasonable use thereof under all the circumstances, was a question of fact, and as such was properly left to the jury upon the evidence.

The second ground stated for the foundation of the motion for a nonsuit was that the defendant and his grantors, having for more than twenty years cast the dust and debris from his mill into the stream, had thereby acquired a prescriptive right to continue the practice, and that the ground stated was that "a mere change in the manner of using the right which he had by law, that is, changing the mill from a water to a steam mill," did not vary the defendant's rights. We understand the law to be well settled, that the right acquired in such cases by prescription or presumptive grant must be commensurate with the extent of the previous enjoyment, and that the mode and manner of using the water of a stream, where a party relies upon prescription, cannot be materially varied to the injury of others on the same stream, unless the mode of use thus changed has been the same continually for a period of twenty years. Thus, in *Marcly* v. *Shults* (29 N. Y., 346), it was held that where the right acquired by prescription was to use "flush

boards" on a dam for a few months in the year only, their use or the use of any equivalent at other times was not justified by the prescription, and the parties injured were entitled to damages arising from the use of such flush boards, at times when the defendant had not been accustomed to use them. (See, also, Ang. on Water Courses, §§ 224, 230; *Baldwin* v. *Calkins*, 10 Wend., 169.) The evidence in the case tended to show, if it did not clearly establish, that the prescription claimed by the defendant to cast his sawdust and refuse into the stream was only during certain seasons of the year, when the water was at such a stage as that it was floated off and over the plaintiff's dam, without injury to his rights as a riparian owner or to his mill; but after the mill was converted into a steam mill, which was only about ten years before the commencement of the action, the exercise of the right to thus obstruct and pollute the stream had been extended to other seasons of the year, and to periods when owing to the stage of the water in the stream the plaintiff was seriously injured thereby, whereas before, the act had been comparatively innocuous. It was, therefore, a question for the jury whether, after the conversion of the defendant's mill into a steam mill, there had been a material change in the use of the water by the defendant, which resulted in damage to the plaintiff. The charge of the justice at the circuit seems to have been unusually careful and distinct upon all the questions involved, and was, as we think, in accordance with the rules of law applicable to the subject. The first and second of the requests to charge by the defendant's counsel called upon the court to determine questions of fact which were properly left to the jury upon the evidence. The third request had been charged, in substance, and the law fully and properly explained. The fourth of the requests to charge by the counsel for the defendant was "that if the plaintiff had omitted the proper and ordinary means of avoiding the annoyance and injury caused by the use of the defendant's property, his own negligence contributed to the injury, and the plaintiff is not entitled to recover."

Upon this subject the court has given instructions to the jury, quite as favorable as any the defendant had the right to ask. In the case of *O'Riley* v. *McChesney*, before cited from 3 Lans., 278, which was a case quite similar in the questions involved to the

present one, the defendant, the owner of a flax mill, allowed flax shives to float down the current, and they accumulated a deposit and impaired the use of the plaintiff's mill pond, the court held that such was not only not a reasonable and ordinary use of the defendant's privilege, but that he was liable, even if the plaintiff might have remedied the evil by a different construction of his dam.

The fifth request involved a question of fact, which was properly left to the jury upon conflicting evidence, and with the proper instruction in substance, that if they found the injury to the plaintiff had to any extent been due to the settling of his own dam, the circumstance would lessen the amount of the damages the plaintiff was entitled to recover, to the extent that the damage sustained by him was due to such settling of the dam. We see no ground on which the judgment ought to be reversed.

Judgment affirmed.

Present — MULLIN, P. J., SMITH and TALCOTT, JJ.

Ordered accordingly.