(2 Misc. Rep. 427.)

KETCHAM et al. v. COHN et al.

(Common Pleas of New York City and County, General Term. February 6, 1893.)

1. TRESPASS BY INDEPENDENT CONTRACTORS—LIABILITY OF EMPLOYER.

Defendant employed a contractor to shore up plaintiff's wall, to prevent it from falling into an excavation which defendant was making on an abutting lot. The contractor's employes, without permission from plaintiff, entered plaintiff's premises, and put beams through the wall, whereby plaintiff's property was injured. The wall could not have been shored up by any other method, and it was not claimed that the work was negligently or improperly done. *Held*, that the work done was necessarily injurious to plaintiff, and defendant was not relieved from liability by the fact that it was done by an independent contractor.

2. SAME—DAMAGES.

Plaintiff will not be restricted to nominal damages because defendant was not obliged to shore up the wall, and his doing so saved plaintiff from greater damages.

Appeal from trial term.

Action by Andres W. Ketcham and others against Isidor Cohn and Henry Newman for damages for trespass. From a judgment entered on a verdict for plaintiffs, and from an order denying a motion to set aside the verdict, and for a new trial, defendants appeal. Affirmed.

Argued before DALY, C. J., and BOOKSTAVER and BISCHOFF, JJ.

Nathaniel Myers, for appellants.

Morgan & Ives, (Eugene S. Ives, of counsel,) for respondents.

BOOKSTAVER, J.   In the spring of 1882 the plaintiffs were copartners composing the firm of A. W. Ketcham & Co., wholesale dealers in millinery goods, and were the lessees and occupants of the ground floor and cellar of the premises No. 632 Broadway, New York city.   At the same time the defendants were the owners of the adjoining premises on the south, Nos. 628 and 630 Broadway, and were causing an old building upon those premises to be torn down, and a new one to be erected in its stead, making excavations for that purpose to a depth of 32 feet below the curb.   This action is brought for the trespass alleged to have been committed by the defendants upon the plaintiffs' premises by their act of shoring up the building occupied by the plaintiffs to prevent it from falling into the excavation upon their lots.   To do this shoring, defendants made a contract with one Goodwin.   The employes of this contractor entered upon the premises of the plaintiffs, broke open the wall of the building, put large beams or needles through the wall and upon the premises of the plaintiffs, and, as appears by the testimony, this caused material damage to the property of the plaintiffs.   It was not claimed that the work of shoring up was negligently or improperly done, or that it could have been done in any other way than that employed.   One of the plaintiffs testified that he could not state any other way in which that building could have been shored up; and the testimony of Goodwin, the contractor, is to the same effect.   The evidence further shows that the building occupied by the plaintiffs was, for a distance of nearly 100 feet back from the Broadway front, an old, three-story brick building, and that its foundations extended only some nine feet below the curb, while on the rear of the premises was merely a one-story frame extension, without foundations, and resting immediately upon the ground; and it is very apparent from the testimony in this case that the southerly wall of the building occupied by the plaintiffs must have fallen but for the shoring up.   At the close of plaintiffs' case the defendants moved for the dismissal of the complaint, and the like motion was made at the close of the whole case, both of which were denied, and defendants excepted.   The defendants also requested the court to charge the jury:

"(1) If the plaintiffs refused to afford Mr. Goodwin or the defendants the necessary license to enter on their premises, and to do such things as were necessary to preserve the southerly wall of No. 632 Broadway from injury, and to properly support the same, during the excavations upon No. 630 Broadway, and if, by reason of the condition and location of said wall at the time when said excavations were commenced, the said wall was in danger, if such excavations were made, of falling upon defendants' premises, the defendants had a right to protect themselves against such an occurrence, and are not liable to the plaintiffs for such acts of themselves, or their subcontractors or servants, as were necessary to prevent the same, provided said acts were free from negligence.   (2) If the plaintiffs forbade Mr. Goodwin or his employes from entering their premises for the purpose of preserving the southerly wall of 632 Broadway, and supporting the same, during the excavations upon the defendants' premises, such action had the same effect upon the rights of the parties to this action as a refusal by the plaintiffs to afford a license for that purpose, and if, by reason of the condition and location of said wall at the time when said excavations were commenced, the said wall was in danger, if such excavations were made, of falling upon the defendants' premises, the defendants are not liable to the plaintiffs for such acts of themselves, or their subcontractors or servants, performed without negligence, as were necessary to prevent such fall-

ing of such wall. (3) If the plaintiffs refused to afford the necessary license to enter their premises, and to do such acts as were necessary to preserve the southerly wall of 632 Broadway from injury, and to properly support the same, during the excavations upon No. 630 Broadway, or forbade Mr. Goodwin from entering their premises for that purpose, the defendants are not chargeable for acts. done without negligence, which were necessary to prevent the said wall from falling upon their premises, or, at most, are chargeable only with nominal damages therefor. "

The court refused to charge these requests, and exceptions to such refusal were duly taken by the defendants.   The chief questions involved by these refusals to the charge of the court are:   First, was any trespass committed? second, if a trespass was committed, are the defendants liable for the acts of the persons who committed the trespass? and, third, were the plaintiffs damaged by the trespass, and in what amount?

The first of these questions is one of fact.   The appellants concede that certain persons employed by Mr. Goodwin, the contractor, entered upon the premises of the plaintiff.   This entry would constitute a trespass, if unauthorized.   The appellants on the trial contended that such persons entered by virtue of a license and permission of the plaintiffs. Whether or not the appellants had such license and permission to enter upon their premises was fully and fairly presented to the jury by the learned judge who tried the case.   The evidence on behalf of the plaintiffs, that no license or permission had been given, was positive, and in our judgment sufficient to warrant the jury in finding in favor of the plaintiffs on that contention; and consequently their finding is binding upon us, and we must conclude that a trespass had been committed.

We then come to the consideration of the question of whether or not the defendants are liable for the acts of the persons who committed the trespass, and this is the chief one to be determined on this appeal.   It appears from the testimony that the defendants made a contract with the firm of F. & S. E. Goodwin to do the shoring necessary to erect the buildings 628 and 630 Broadway.   It further appears that Mr. Goodwin is one of the most experienced shorers in the city of New York. He testified:

"After forty years' experience, I know of no other way in which I could have shored up that brick wall — the south brick wall of 632 Broadway— than the way which was employed. "

It was the employes of Mr. Goodwin who committed the trespass by reason of which the plaintiffs were damaged, and this was so charged, at the request of the defendants.   There is no proof to the effect that Mr. Goodwin did not do his work with skill and diligence.   Therefore, the necessary effect of the contract whereby the defendants employed Mr. Goodwin was the trespass, and the damage consequent thereupon. It is the well-settled law of this state that, if the work done under a contract necessarily produces an injurious result, the person for whose benefit the work is done cannot shield himself by showing that it was done by an independent contractor.   Dorrity v. Rapp, 72 N. Y. 307; Town of Pierrepont v. Loveless, Id. 211.   It is also the well-settled rule in other states, and is well expressed by the court in the case of Railroad Co. v. Kimberly, 87 Ga. 161, 13 S. E. Rep. 277.   The gen-

eral rule of law upon this subject, says the learned justice delivering the opinion of the court, is:

"Where an individual or corporation contracts with another individual or corporation, exercising independent employment, for the latter to do a work not in itself unlawful, or attended with damage to others,—such work to be done according to the contractor's own methods, and not subject to the employer's control or orders, except as to the result to be obtained,—the employer is not liable for the wrongful or negligent acts of the contractor, or any of the contractor's servants. To the general rule there are several exceptions. Where the work is wrongful in itself, or, if done in the ordinary manner, would result in a nuisance, the employer will be liable for injury resulting to third persons, although the work is done by an independent contractor. This is upon the principle that, if one contracts with another to commit a nuisance, he is a trespasser, by reason of his directing or participating in the work. In other words, the rule is that if the act or neglect which produces the injury is purely collateral to the work contracted to be done, and entirely the result of the wrongful acts of the contractor and his workmen, the proprietor is not liable; but if the injury directly results over the work which the contractor engaged and was authorized to do, he is equally liable with the contractor."

See, also, Blake v. Ferris, 5 N. Y. 48; Pack v. Mayor, etc., 8 N. Y. 222; Kelly v. Mayor, etc., 11 N. Y. 432; Herrington v. Village of Lansingburgh, 110 N. Y. 145, 17 N. E. Rep. 728.

And it seems to follow from this that the defendants in this case were liable for the trespass of Goodwin's employes.

But appellants contend that the trespass, if a technical one, was for the benefit of the plaintiffs, and to minimize the damage which they otherwise would have sustained by the doing of a lawful act upon their own premises, which necessarily involved some loss to the plaintiffs, and were not entitled, either at common law or under the statute, to have a building occupied by them supported by the soil of the adjoining premises, and consequently no damages can be recovered by them for injuries which they have sustained solely through the excavations made upon such premises; relying on Dorrity v. Rapp, supra. It is an elementary principle, in reference to private rights, that every individual is entitled to the undisturbed possession and lawful enjoyment of his own property. But the mode of enjoyment is necessarily limited by the rights of others; otherwise, it might be destructive of their rights, altogether. As was said in Hay v. Cohoes Co., 2 N. Y. 159, where the defendants, a corporation, dug a canal upon their own land for the purposes authorized by their charter, and in doing so it was necessary to blast rocks with gunpowder, and the fragments were thrown against, and injured, the plaintiff's dwelling, upon the land adjoining:

"The defendants had the right to dig the canal; the plaintiff, the right to the undisturbed possession of his property. If these rights conflict, the prior must yield to the latter, as the more important of the two, since, upon grounds of public policy, it is better that one man should surrender the particular use of his land than that another should be deprived of the beneficial use of his property altogether, which might be the consequence if the privilege of the former should be wholly unrestricted. The case before us illustrates this principle, for if the defendants, in excavating their canal in its lawful use of its land, could, in the manner mentioned by the witnesses, demolish the stoop of the plaintiff with impunity, they might for the same purpose, on the exercise of reasonable care, demolish his house, and thus deprive him of all use of his property. The use of land by the proprietor is not, therefore, an absolute right, but qualified and limited by the higher right of others, and the lawful possession of their property.

To this possession the law prohibits all direct injury, without regard to its extent, or the motives of the aggressor. A man may prosecute such business as he chooses upon his premises, but he cannot erect a nuisance, to the annoyance of the adjoining proprietor, even for the purpose of lawful trade. Aldred's Case, 9 Coke, 58. He may excavate a canal, but he cannot cast the dirt or stones upon the land of his neighbor, either by human agency or the force of gunpowder. If he cannot construct the work without the adoption of such means, he must abandon that mode of using his property, or be held responsible for all damages resulting therefrom. He will not be permitted to accomplish a legal object in an unlawful manner. In Rolle's Abr. 565, it was said that if A. erects a new house upon the confines of his land next adjoining the land of B., and B. afterwards digs his land so near the land of A. that it falls, no action can be sustained by A. The purpose of B., in the case stated, in digging upon his own land, was lawful, and so, for aught that appears, were the means taken to accomplish it. The right of A. to occupy and use his land in a particular manner was qualified and limited by a similar right in B. No action, consequently, could be sustained. 'A man, however, cannot dig his land so near mine [adds the reporter] as to cause mine to slide into the pit.' In the last case the injury would consist in depriving one of a part of the soil to which his right was absolute. No degree of care in the excavation by the pit owner would, I apprehend, justify the transfer of a portion of another's land to his own."

And the doctrine of Hay v. Cohoes Co. has ever since been sustained in this state. Pixley v. Clark, 35 N. Y. 520; Losee v. Buchanan, 51 N. Y. 476; Marvin v. Mining Co., 55 N. Y. 538, 558; Jutte v. Hughes, 67 N. Y. 267, 273; Heeg v. Licht, 80 N. Y. 579, 583; Herrington v. Village of Lansingburgh, 110 N. Y. 145, 17 N. E. Rep. 728. See, also, Prentice v. Geiger, 9 Hun, 351; O'Riley v. McChesney, 3 Lans. 282; Gourdier v. Cormack, 2 E. D. Smith, 202; Farrand v. Marshall, 21 Barb. 409.

Chapter 456, Laws 1885, providing "that whenever excavations hereafter commenced, for building or other purposes, on any lot or piece of land in the city and county of New York and the city of Brooklyn, shall be intended to be carried to the depth of more than ten feet below the curb, and there shall be any party or other wall, wholly or partly on adjoining land, and standing upon or near the boundary lines of such lot, the person causing such excavations to be made, if afforded the necessary license to enter on the adjoining land, and not otherwise, shall at all times, from the commencement until the completion of such excavations, at his own expense, preserve such wall from injury," does not modify the owner's right to make excavations upon his own land, as it existed by common law, but merely imposes upon him a statutory duty, which he is bound to perform on the condition named in the law. The right to excavate remains intact. The only effect of the act is to give a new assurance to the owner or occupant of the adjacent lot. But neither it, nor any other rule of law that we are aware of, gives the party making the excavation liberty or license, against the will of the owner of the adjacent lot, to commit a trespass upon his premises. The appellant argues as if he was under the necessity of fate to excavate his lot to the depth he desired, and that he had no alternative but to do so. Yet the necessity was entirely of his own creation. He could do it or not, as he saw fit. Having himself determined to do it, he must take the responsibility of such determination. He need not have shored up the adjacent wall; and, if he had excavated his own premises in a careful and lawful manner, he would not have

been responsible to the plaintiffs for any injury they might have sustained by reason thereof. But appellants contend that the shoring up was necessary for the safety of their employes, and without such shoring up the work could not be done. If this were so, then, as was said in Hay v. Cohoes Co., supra, he must abandon that mode of using his property, or be held responsible for all damages resulting therefrom. Besides, in this case, he did not confine himself to his own land. He actually entered upon the land of the respondents, by inserting the needle in the walls of the building occupied by them; and in the case last cited it was expressly held that he could not enter upon the land of his neighbor for any such purpose.

Appellants also contend that the damages sustained by the shoring up of the plaintiffs' wall ought not to have been allowed at more than a nominal amount, because the acts done by them, even if there was a trespass, were without malice, and largely for the purpose of minimizing the injury which the plaintiffs would otherwise have suffered. But whatever damage the plaintiffs did suffer was not in mortum or ex necessitate, but arose from the voluntary act of the defendants; and whatever the amount of it, they must be responsible for it.

We therefore think the exceptions taken to the refusal to dismiss the complaint, and to the refusals to charge, were not well taken. We arrive at this conclusion with reluctance; for its effect cannot but be to retard the growth of large cities, and put obstruction in the way of the erection of larger, more beautiful and substantial buildings in the place of dilapidated and antiquated ones, when the owners of adjacent property are so churlish as to refuse permission to shore up as provided by the act before mentioned, or where the landlord of the adjacent property has let it to tenants, and the permission of both cannot be obtained. To us it seems as if the views of the late learned Judge Bronson in Radcliff's Ex'rs v. Mayor, etc., 4 N. Y. 203, were wise and far-seeing, and tended to the benefit of the public, even if at some loss and inconvenience to private individuals. In the course of that opinion, he said:

"But still I think the reasoning unsound, [referring to the respective rights of adjacent owners,] especially in reference to properties in cities and large towns. If the doctrine were carried out to its legitimate consequences, it would often deprive men of the whole beneficial use of their property. An unimproved lot of land in the city of Brooklyn would be worth little or nothing to the owner, unless he were allowed to dig in it for the purpose of building; and if he may not dig, because it will remove the natural support to his neighbor's soil, he has but a nominal right to his property, which can only be made good by negotiation and compact with his neighbor. A city could never be built under such a doctrine. I think the law has superseded the necessity for negotiation, by giving every man such a title to his own land that he may use it for all the purposes to which such lands are usually applied, without being answerable for the consequences, and provided he exercises proper care and skill to prevent any unnecessary injury to the adjoining landowner. The saying of Rolle may have been a wise one, in his day, but it is not well adapted to our times."

But, as before shown, this view of the law has not been sustained in this state; and we must follow the law as we understand it, leaving it to the legislative authority to correct any evils that may lie in the law as it now exists, and is expounded by the courts.

Other exceptions were taken by the appellants during the course of

the trial, but none of them were argued by either counsel upon the appeal, either orally or in his brief; and we do not, therefore, think it necessary to examine them at length.

The judgment should be affirmed, with costs.