THE ATLANTA AND FLORIDA RAILROAD CO. *v.* KIMBERLY.

1. As a general rule, a railroad company is not liable for an injury resulting from a nuisance created by the negligence of an independent contractor in constructing its railroad, where it retains no control over the contractor except to see, by its superintendent, that the railroad is built according to the contract. (R.)
2. The proper construction of a railroad under the authority given by the charter of the company, will not result in a nuisance; and the contract for its construction implies that the contractor shall do the work properly, the contrary not appearing. (R.)
3. If a particular size of sewer-pipe were placed at a certain point by direction of the company or according to the specifications in the contract, and this part of the plan were inherently defective, and the nuisance were thus caused, the company would be liable for the injury thereby sustained; but if the company did not direct such pipe to be placed, and the contract specifications did not require it, and it was so placed by the contractor according to his own judgment, and negligently, the company would not be liable although it had notice from the plaintiff that, in his opinion, the pipe was too small. Such independent contractor is not the servant or agent of the company; and for his negligence in performing, for the company, work lawful in itself, he and not the company is liable. (R.)
4. No duty is imposed upon the company here, either by contract or by statute, to build its road or to do it in a particular way. It may contract with others for the construction of its road, and such contract is not such a delegation of its chartered rights as to render it liable for unauthorized wrongs committed by the contractor or his servants while engaged in the work. (R.)
5. The company not being in possession of the railroad at the time the injury from the nuisance was received, and not appearing to have known that there was a nuisance, no ratification by it of any act of the contractor which created the nuisance is shown. (R.)
6. Where, in answer to an interrogatory, a witness testified that in his opinion four named causes produced malaria, the answer being objectionable on the ground that two of the causes were not covered by the allegations of the declaration, the whole answer should have been excluded, not merely the portion not covered by the pleadings. The error in deciding that the part remaining could be read, was not waived by the consent, after the ruling, that the whole of the answer might be read. (R.)
7. Declarations of persons not servants or agents of the railroad company were not admissible to bind it. (R.)

April 24, 1891.
v 87-11

Damages. Negligence. Railroads. Contracts. Master and servant. Nuisance. Evidence. Before Judge RICHARD H. CLARK. Clayton superior court. September term, 1890.

To the report contained in the decision the following is supplemental : It appeared from the evidence that the railroad was built by the Chattahoochee Brick Co. and James, under contract with the defendant company. One stipulation in this contract is, that the chief engineer of the railroad company may determine all questions as to grade, width of road-bed and slope of cuts. It further provides that the work is to be done under certain specifications giving prices for earth, rock, drain-pipes of certain sizes, etc. Under the testimony, it was contended for the plaintiff that the defendant interfered in the construction of the road to the extent of directing, by its chief engineer, the putting in of a drain-pipe for the escape of water ponded about one hundred feet from the plaintiff's house, by throwing up earth for the railroad-bed; that the pipe was insufficient to carry off the water; that the sickness of the plaintiff and his wife was caused from malaria thereby produced; and that he notified the president and the chief engineer of the defendant, as well as English and another person in charge of the convicts doing the work, that the pipe was insufficient, this being before the cause of the sickness was created and when there was opportunity to see that the proper pipe was put in. On the other hand, Collier, the defendant's chief engineer, testified that he had nothing to do with putting in the pipe nor was it put in by the defendant, that he had no authority to direct in this regard but could only reject the work if it was objectionable, and that, as an expert, he would say that the pipe was amply sufficient to carry off the water. There was testimony that he ordered a pipe at another place

to be taken out and another put in, which was done; but he denied that he gave such order, and testified that he changed the pipe to save a spring.

Following are the 5th and 6th grounds for new trial:

(5) The plaintiff testified that after he complained of the pipe to the defendant's chief engineer, who replied that it was the pipe that was ordered, he (plaintiff) went to see English, who told him that it was such a pipe as the company furnished. "He never said who furnished him, and I never asked him. I simply spoke to him about the pipe, and he said that it was such a pipe as they furnished him. I just asked him to put in a larger pipe, and he said, 'This is such as they furnish me,' not saying who furnished him." Question: "What did you understand him to mean?" Answer: "I understood that it was the railroad that furnished the pipes." It is assigned as error that the court overruled the objections to this testimony, when it was not shown that English was the agent or servant of the defendant, or in any way or sense connected with the defendant save by contract, nor was he a party to the suit.

(6) Error in overruling defendant's objections to the following testimony by Harrison, when it was not shown that "they" or Hammond were the agents or servants of the defendant: Question: "Well, they were putting in pipe; what did they say to you?" Answer: "I asked Capt. Hammond why they took it (the pipe) out, and he replied with an oath or two; he ripped out an oath—several oaths, and said that Capt. Collier said that they would have to take it out and put it in again."

PAYNE & TYE and N. J. & T. A. HAMMOND, for plaintiff in error.

JOHN C. REED and DORSEY, BREWSTER & HOWELL, contra.

SIMMONS, Justice.

Kimberly sued the railroad company for damages, and alleged in his declaration that while the company was constructing its road, it made a deep cut and piled the fresh earth therefrom near his dwelling-house, and dammed up a small stream and ponded the water therefrom near the house; and that it also stationed near the house a camp of convicts whom it was using in said construction, and permitted the filth accumulating in the sinks of this camp and otherwise therein from the convicts, to flow from the camp and be deposited a few yards from the house; by reason of which the air in and around the house became infected with noxious scents, malaria and other substances injurious to health, whereby plaintiff and his wife both became sick and endured great pain and suffering and were unable to attend to their daily duties, etc. The defence of the railroad company was, that it did not do the acts complained of in the declaration; that if they were done at all, they were done by the Chattahoochee Brick Company, an independent contractor which it had employed to build the railroad from Atlanta to Senoia. On the trial of the case the jury found a verdict for the plaintiff, and the defendant made a motion for a new trial on the various grounds set out therein, which was overruled, and it excepted.

The main question argued before us was whether, under the facts of this case, the railroad company was liable for the damages sustained by Kimberly. The general rule of law upon this subject is: where an individual or corporation contracts with another individual or corporation exercising an independent employment, for the latter to do a work not in itself unlawful or attended with danger to others, such work to be done according to the contractor's own methods and not subject to the employer's control or orders except as to

the results to be obtained, the employer is not liable for the wrongful or negligent acts of the contractor or of the contractor's servants. Code, §2962; *Kiser* v. *Harrison,* 79 *Ga.* 588. And see the following text-books and cases therein cited : 1 Lawson Rights, Remedies and Practice, §295 ; 2 Thomp. Neg. 899 *et seq.,* 909–13; 2 Wood Rwy. L. §284; also 1 Addison Torts, 302 ; Cooley Torts, 644 ; Bishop's Non-Contract Law, §606 ; Pierce Railroads, 286–91 ; 1 Rorer Railroads, 468–70 ; Whittaker's Smith. Neg. 171 *et seq.*; Wood Nuis. §77, p. 81 ; Dicey Parties, 2 Am. ed. 468 *et seq.* See especially the following cases : Peachey *v.* Rowland, 22 L. J. 81, 13 C. B. 182 ; Cuff *v.* Railroad, 35 N. J. L. 17, 10 Am. Rep. 205; Clark *v.* Railroad, 36 Mo. 202 ; McCafferty *v.* Spuyten Duyvil, etc. Railroad, 61 N. Y. 178, 19 Am. Rep. 267; Hughes *v.* Railroad, 15 Am. & Eng. R. R. Cas. 100 ; Hilliard *v.* Richardson, 3 Gray, 349, 63 Am. Dec. 743 ; Eaton *v.* Rwy. Co., 59 Me. 520, 8 Am. Rep. 430 ; Wabash, etc. Rwy. Co. *v.* Farver, 111 Ind. 195, 12 N. E. Rep. 296 ; Kans. Cent. Ry. Co. *v.* Fitzsimmons, 18 Kan. 34 ; Painter *v.* Pittsburg, 46 Pa. St. 220, 3 Am. L. Reg. 350.

To the general rule there are several exceptions.

(1) Where the work is wrongful in itself, or if done in the ordinary manner would result in a nuisance, the employer will be liable for injury resulting to third persons, although the work is done by an independent contractor. This is upon the principle that if one contracts with another to commit a nuisance, he is a co-trespasser by reason of his directing or participating in the work. In other words, the rule is that "if the act or neglect which produces the injury is purely collateral to the work contracted to be done, and entirely the result of the wrongful acts of the contractor and his workmen, the proprietor is not liable; but if the injury directly results from the work which the con-

tractor engaged and was authorized to do, he is equally liable with the contractor." 2 Thompson Negligence, 903.   See also authorities cited *supra.*

(2) If, according to previous knowledge and experience, the work to be done is in its nature dangerous to others, however carefully performed, the employer will be liable and not the contractor, because, it is said, it is incumbent on him to foresee such danger and take precautions against it; and this is the principle upon which the cases of Bower *v.* Peate, 1 Q. B. Div. 321, Tarry *v.* Ashton, *Id.* 314, and Pickard *v.* Smith, 10 C. B. 470, relied on by the defendant in error, were decided.   And in this exception is included the principle that where the injury is caused by defective construction which was inherent in the original plan of the employer, the latter is liable.   See authorities cited *supra;* also Robbins *v.* Chicago, 4 Wall. 657; Boswell *v.* Laird, 8 Cal. 469, 68 Am. Dec. 345; Lancaster *v.* Insurance Co., 92 Mo. 460, 1 Am. St. Rep. 739.   For instance, if a person employs another to erect a building, and the plan of the building is defective, the walls being too thin and weak, and the building while in process of erection falls and causes injury to a third person, the employer, and not the contractor, is liable. Or if a contractor is employed to build a sewer, and the employer agrees to furnish the materials, and the sewer-pipe furnished by the employer is too small, and damage is sustained by reason thereof, the employer is liable.

(3) The next exception is where the wrongful act is the violation of a duty imposed by express contract upon the employer; for where a person contracts to do a certain thing, he cannot evade liability by employing another to do that which he has agreed to perform. For instance, where a company undertook to lay water-pipes in a city, agreeing with the city that it would " protect all persons against damages by reason of ex-

cavations made by them in laying pipes, and to be responsible for all damages which might occur by reason of the neglect of their employees in the premises," and the company let out the work to a contractor who used a steam-drill in such a manner as to frighten a traveler's horse and injure the traveler, it was held by the Supreme Court of the United States that the company was liable. Water Co. v. Ware, 16 Wall. 566.

(4) The next exception is where a duty is imposed by statute. The person upon whom a statutory obligation is imposed is liable for any injury that arises to others from its non-performance or in consequence of its having been negligently performed, either by himself or by a contractor employed by him. Thus, where the statute imposed upon a railroad company, as a duty to the proprietors of inclosures through which the road passed, the obligation of placing stock-guards and preserving or supplying fences on the right of way, and protecting the inclosure from injury, in the construction of its road, the company was held liable for the failure to perform such duty, though resulting from the negligence of a contractor. Houston & Great Northern R. Co. v. Meadow, 50 Tex. 77. And it was upon this principle that the cases of *Wilson* v. *White,* 71 *Ga.* 506, Gray v. Pullen, 5 Best & Smith, 970, Hole v. Sittingbourne, etc. R. Co., 6 Hurl. & N. 488, and Chicago, etc. R. Co. v. McCarthy, 20 Ill. 388, relied upon by counsel for the defendant in error, were decided. And the case of Hinde v. Wabash Navigation Co., 15 Ill. 72, also relied upon for the defendant in error, falls under the same principle. In that case the charter imposed upon the company the duty of paying for all material taken for the use of its work, and expressly gave a remedy against the company; and it was held that the company could not, by delegating its work to a contractor, escape liability for material

taken by him for the work; especially as he was working under the immediate supervision and direction of the engineer of the company.

(5) The employer may also make himself liable "by retaining the right to direct and control the time and manner of executing the work, or by interfering with the contractor and assuming control of the work, or of some part of it, so that the relation of master and servant arises, or so that an injury ensues which is traceable to his interference. But merely taking steps to see that the contractor carries out his agreement, as having the work supervised by an architect or superintendent, does not make the employer liable; nor does reserving the right to dismiss incompetent workmen." 1 Lawson Rights, Remedies and Practice, §299; *Kiser* v. *Harrison, supra.*

(6) The employer may also be held liable upon the ground that he has ratified or adopted the unauthorized wrong of the independent contractor. See *Kiser* v. *Harrison, supra;* 2 Thomp. Neg. 903, 915.

Applying the foregoing principles to the facts of this case, we find that the railroad company made a contract with the Chattahoochee Brick Company, whereby the latter agreed to build the former's road from Atlanta to Senoia according to certain specifications; and the railroad company did not retain any control over the contractor as to the method or manner of doing the work. The construction company was to furnish the labor and all the materials, including the pipes with which the sewers or culverts were to be built. All the control reserved by the road was, that its superintendent was to see that the road was built according to the contract. There is no indication in the record, outside of some loose and illegal declarations of third parties, the admission of which as evidence we will speak of presently, tending to show that the railroad company

had any authority, power or control over the construction, as to the manner or means of doing the work. This being true, the railroad company, under the general rule above announced, is not liable for the negligent acts done by the contractor. It was argued by the able counsel for the defendant in error that the building of a railroad necessarily results in a nuisance, unless certain precautions are taken to prevent it; that the low places by which the surrounding lands are drained and from which the water is carried off must be filled up, and unless certain precautions are taken to provide an escape for the water, a nuisance necessarily results; and that the railroad company cannot escape liability by having the work done by an independent contractor. If the premises of counsel are true, the conclusion might also be true; but if a railroad is built properly, we do not think any nuisance will result from the building. The company, under its charter, had authority of law to do this work; and when it contracted with the construction company, it was of course implied that the latter would do the work in a proper and lawful manner. " A person employing another to do a lawful act is presumed, in the absence of evidence to the contrary, to have employed him to do it in a lawful and reasonable manner; and therefore, unless the parties stand in the relation of master and servant, the employer is not responsible for damages occasioned by the negligent mode in which the work is done." 1 Redfield Rwys., 6 ed. 542.  Moreover, the evidence shows that in the very place where this nuisance is said to have occurred, the railroad company had provided means which if used would have prevented the nuisance. The superintendent directed that a waste-way should be placed there, but the contractor put in a pipe which the defendant claims was one of the causes of the nuisance, (1) by being too small to carry off the water in proper time, and

(2) because it was not put upon the bed of the stream, but several inches above the bed, thereby causing the water to pond near the plaintiff's house. Nor would the other things which it is claimed caused the nuisance, to wit, the throwing up of the fresh dirt, the convict camp and the hog and horse lot, render the railroad company liable. It had lawful authority for excavating the hills and filling the bottoms in order to make its road-bed. And the placing of the convict-camp and the hog and horse lot near the plaintiff's house was the act of the construction company, over which, it appears from the record, the railroad company had no power or control. So it will be seen that the work committed to the construction company was not wrongful *per se*, nor did it necessarily result in a nuisance, and therefore does not fall within the first exception to the general rule. Nor is there any legal evidence to show that it would fall within the second exception. It is claimed that the pond of water was caused by the sewer-pipe being too small to carry it off, but there is no evidence that the railroad company directed, that this particular size of pipe should be placed at that point. It is true there are some declarations of Hammond and English to the effect that the superintendent ordered it to be put there; but these declarations were illegal and should have been excluded. If it should be shown upon the next trial that this particular size of pipe was placed at that point by direction of the company, or if the specifications in the contract required it to be placed there, and it should be further shown that this part of the plan was inherently defective, and that it caused this nuisance and the plaintiff sustained injury thereby, the railroad company would be liable. But if the railroad company did not direct this particular size of pipe to be placed at that point, or its plans and specifications did not require it, and it was put there by the

contractor according to his own judgment, and negligently placed above the bed of the stream, then the railroad company would not be liable, although it may have had notice from the plaintiff that in his opinion the pipe was too small. If the railroad company had no control over the contractor as to the manner in which he should build the sewer or put in the pipe, any notice which the plaintiff might give its officers would not make it liable. The contractor being in an independent employment, whatever he does outside of or beyond his contract is a collateral act for which the employer is not liable. He is not the servant or agent of the employer, and the employer cannot be held liable for any acts of negligence committed or omitted by him outside of his contract. Where the work he is engaged to do is lawful, the law presumes that he will do it in a lawful manner; and if he does it illegally, he is liable and not the employer.

Nor do the facts of the case bring it within the third or the fourth exception. There was no duty imposed upon the railroad company, either by contract or by statute, to do this particular work, or to do it in a particular way. Its charter does not impose upon it the duty of building the road, and does not specify the manner in which it shall be built; nor is any liability imposed upon it for acts of the kind complained of in this case. The authorities all hold that a railroad company has the right to make a contract with other parties for the construction of its road, and it is held that a contract of this character is not such a delegation of its chartered rights as to render the company liable for unauthorized wrongs committed by the contractor or his servants while engaged in the work. "The principle that a railroad company cannot delegate to an employee its chartered rights and privileges so as to exempt it from liability, does not extend to the use of

the ordinary ways and means for the construction of the road, but to the use of such extraordinary powers only as the company itself could not exercise without having first complied with the conditions of the legislative grant of authority. Thus, after having first procured the right of way, the company can delegate to another lawful authority to enter upon the same and make its road-bed and perform other proper acts of construction; but it cannot delegate such lawful authority without having first secured the right of way by donation, purchase or the exercise of the right of eminent domain." Cunningham v. Railroad Co., 51 Tex. 513. See Pierce Railroads, 290.

As we have already seen, the case does not come within the fifth exception, for there is no legal evidence that the railroad company had any control over the construction, as to the manner or means of doing the work. Nor does it come within the next exception, for the facts do not show any ratification of the wrongful acts of the contractor. It is not shown when the company accepted the road from the contractor. The evidence does show that the work near the plaintiff's house was done either in March, April or May, and that about the 1st of June the plaintiff and his wife became sick. But under the contract the road was not to be turned over to the company until several months after this. The company not being in possession of the road at the time the plaintiff received the injury from the nuisance, and there being no evidence to show that it knew there was a nuisance, it cannot be said that the company ratified any act of its contractor which created a nuisance.

It only remains for us to say that we think the court should have excluded the whole answer to the interrogatory set out in the 4th ground of the motion for a new trial, and that the error was not cured by the

agreement of defendant's counsel that the whole might be read, after the court had decided that only a part of it could be read. In his answer the witness assigned four causes which in his opinion produced the malaria: the embankment of loose earth, the horse lot and the hog lot, and the dam. This answer was objected to because there was no allegation in the petition that the horse lot and hog lot produced the malaria. The court therefore ruled that these two reasons should be stricken, and the remainder of the answer read. The effect of this ruling was to make the witness testify that the loose earth and the dam alone produced the malaria, when the answer showed that in his opinion it was produced by these and the horse and hog lot. We do not think the answer of the witness ought to have been cut up in this manner. By so doing he was made to testify what he did not intend to. The plaintiff should either have amended his declaration to meet the proof, or the whole answer should have been excluded. Nor do we think the defendant waived this error by consenting after the above ruling that the whole should be read. The ruling of the court striking out two of the causes of malaria and leaving in two, placed the defendant in a worse position than that in which it would have been if the whole answer had remained.

The court should also have excluded the declarations of English and Hammond as set out in the 5th and 6th grounds of the motion. They were not the servants or agents of the railroad company, and any declarations they may have made would not bind the company.                    *Judgment reversed.*