## 40628. PRICE v. CITY OF SNELLVILLE.
(317 SE2d 834)

BELL, Justice.

Prior to 1982, sales of distilled spirits by the drink for consumption on premises were illegal in Gwinnett County. In a November 2, 1982 special referendum election conducted pursuant to OCGA § 3-4-92, Gwinnett County voters were asked the following question: "SHALL THE GOVERNING AUTHORITY OF GWINNETT COUNTY BE AUTHORIZED TO ISSUE LICENSES TO SELL DISTILLED SPIRITS FOR BEVERAGE PURPOSES BY THE DRINK, SUCH SALES TO BE FOR CONSUMPTION ON THE PREMISES?" A majority voted affirmatively. The appellee City of Snellville ("the City"), which is located within Gwinnett County, did not hold an independent City-wide referendum on this issue. In 1983 appellant Margaret Mays Price, who owns and operates a Snellville restaurant, filed an action against the City and various City officials. Price prayed for a mandamus absolute to require the City to adopt ordinances necessary for issuance of licenses to sell distilled spirits by the drink for consumption on the premises within Snellville, and to require the City to issue her a license for sale of distilled spirits by the drink for consumption within her restaurant. Both sides moved for summary judgment. The trial court granted summary judgment in favor of the City and denied Price's motion, holding that the City was without power to adopt ordinances and issue rules and regulations governing the sale of distilled spirits by the drink for on premises consumption, and did not have authority to issue licenses for such sales, because the City voters had not legalized said sales in a municipal referendum pursuant to OCGA § 3-4-92. Price appeals, and we affirm.

The express language of the ballot presented the voters of Gwinnett County with the question of whether "the governing authority of Gwinnett County" should be vested with the power to issue the type of license in question. It is obvious that the governing authority of Gwinnett County is the Board of Commissioners, and there can be no doubt that the November 2, 1982 election did not expressly vest the City with such authority. However, it is Price's contention that notwithstanding the fact that the wording of the referendum ballot was so limited, the General Assembly intended the affirmative vote thereon to also empower Gwinnett County incorporated municipalities to adopt licensing ordinances and issue licenses. We disagree with this contention.

OCGA § 3-3-2 (a) provides that "Except as otherwise provided for in this title, the manufacturing, distributing, and selling by wholesale or retail of alcoholic beverages shall not be conducted in any county or incorporated municipality of this state without a permit or

license from the governing authority of the county or municipality." OCGA § 3-4-110 further provides that "The governing authority of every county and municipality authorized to issue licenses as provided in this article shall have the power and authority to adopt all reasonable rules and regulations governing the qualifications and criteria for the issuance of any licenses for the sale of distilled spirits by the drink . . . These powers shall be exercised only after the authority to do so has been granted pursuant to the procedures prescribed in Code Section 3-4-91 or 3-4-92." OCGA § 3-4-92 outlines the procedures for both counties and municipalities to follow in holding referenda to legalize the sale of distilled spirits by the drink if package sales are not already lawful, but this statute is silent on the problem of whether a municipality which has not conducted a local referendum pursuant to OCGA § 3-4-92, but is located within a county which has held a referendum, is empowered by the result of that referendum to allow liquor by the drink sales.

OCGA § 3-4-92 has not been previously construed by this court. However, the statute is the product of a process of legislative development of local option referenda statutes, beginning with Ga. L. 1937-38, Ex. Sess., p. 103, § 4 and its subsequent amendments (repealed by Ga. L. 1980, pp. 1573, 1653-54, § 7 (d)), and is also attributable to *Stephens v. Moran*, 221 Ga. 4 (142 SE2d 845) (1965), which is the leading case interpreting Ga. L. 1937-38, Ex. Sess., p. 103, § 4. In *Stephens* the City of East Point refused to adopt regulations concerning the manufacture and sale of alcoholic beverages and liquors, although the voters of Fulton County had passed a referendum pursuant to Ga. L. 1937-38, Ex. Sess., p. 103, § 4 ("the 1938 Act"), permitting the manufacture, sale, and distribution of same in that county. This court held that "[t]he consequences of an election favoring control of alcoholic beverages and liquors cannot be avoided upon the theory that the result binds only the unincorporated areas of a county. The 1938 Act provides that the question of permitting or prohibiting the sale of liquor shall be submitted 'to the voters of the county,' and that if a majority of the votes shall be favorable, the sale of liquor 'in such county' shall be permitted. Thus, the election and the result are countywide. *Nowhere in the Act is there any procedure for a municipality to conduct such an election.*" (Emphasis supplied.) Id. at 6.

"The cardinal rule in the construction of legislative enactments is to ascertain the true intention of the General Assembly in the passage of the law. [Cit.] All statutes are presumed to be enacted by the General Assembly with full knowledge of the existing condition of the law and with reference to it, and are therefore to be construed in connection and in harmony with the existing law, and as a part of a general and uniform system of jurisprudence, and their meaning and effect is to be determined in connection, not only with the common law and

the Constitution, but also with reference to other statutes *and decisions of the courts.* [Cits.]" (Emphasis supplied.) *Poteat v. Butler*, 231 Ga. 187, 188 (1) (200 SE2d 741) (1973). Subsequent to our decision in *Stephens* the General Assembly enacted a lengthy series of amendments to the 1938 Act which afforded municipalities the right to conduct liquor referenda. See, e.g., Ga. L. 1964, p. 771; Ga. L. 1969, p. 1140; Ga. L. 1972, p. 207; Ga. L. 1973, p. 610. For our purpose it is unnecessary to recount these amendments in detail, and it suffices to note that they eventuated in OCGA § 3-4-92 and other current referenda statutes. In view of the nature of this statutory development, we must presume that the General Assembly took cognizance of the *Stephens* opinion, and that one of its purposes in clothing municipalities as well as counties with the authority to hold such referenda was to avoid the consequences of *Stephens* and permit municipalities to chart a course wholly independent of the counties in determining whether liquor by the drink sales will be allowed within their corporate limits.

*Tatum v. State*, 79 Ga. 176 (3 SE 907) (1887), which is relied on by Price, does not require a contrary holding, but necessitates some comment. In that case this court was called upon to interpret provisions of Ga. L. 1875, pp. 338-41, which provided for the holding of local option liquor referenda in certain enumerated local governmental entities. During the period of over a century since *Tatum* was handed down it has not been cited as precedent by either of this State's appellate courts, and, in particular, was not mentioned by this court in *Stephens v. Moran*, supra, 221 Ga. 4. We find that the interpretation of legislative intent reached in *Tatum* should be confined to its facts, and that it has no contribution to make to our determination of the present issue of statutory construction; instead, the principal sources relevant to this issue are this court's more recent decision in *Stephens* and the modern evolution of liquor referendum statutes.

Price's remaining arguments regarding the proper interpretation of OCGA § 3-4-92 have no merit, and we conclude that the trial court did not err in granting summary judgment to appellees and denying summary judgment to Price.

*Judgment affirmed. All the Justices concur, except Hill, C. J., who concurs in the judgment only.*

DECIDED JULY 9, 1984.

*Gershon, Olim, Katz & Loeb, Max Olim,* for appellant.
*Kilpatrick & Cody, Marc T. Treadwell, Susan A. Cahoon,* for appellee.