40959. PEACHTREE-CAIN COMPANY v. McBEE.
40960. PEACHTREE-HARRIS COMPANY v. ABU-ATA.
40961. PEACHTREE CENTER MANAGEMENT COMPANY
v. PANDAZIDES.
(327 SE2d 188)

BELL, Justice.

We granted certiorari in these three cases, see *Peachtree-Cain Co. v. McBee,* 170 Ga. App. 38 (316 SE2d 9) (1984), to consider the correctness of the Court of Appeals' ruling that a property owner is responsible for the intentional torts committed by an employee of a security agency, where the security agency is hired by a property manager rather than the property owner.

1. At the outset we need to address the appellants' contentions that OCGA §§ 51-2-4 and 51-2-5 provide a rule of nonliability of an employer for the torts of an independent contractor, except in six *exclusive* exceptions relating to negligent torts, thus precluding any imposition of employer liability for the intentional torts of an independent contractor. For this reason, the appellants contend that the Court of Appeals' decisions in the instant case and in *United States Shoe Corp. v. Jones,* 149 Ga. App. 595 (255 SE2d 73) (1979) should be overruled. We disagree.

OCGA § 51-2-4 is a codification of the original common law rule of the nonliability of an employer for the torts of an independent contractor. See Restatement of Torts 2d, Vol. 2, § 409, comment b (1965); *Dekle v. Southern Bell Telephone &c. Co.,* 208 Ga. 254, 256 (66 SE2d 218) (1951); *Fulton County Street R. Co. v. McConnell,* 87 Ga. 756 (13 SE 828) (1891). The reason for the rule is that "since the employer has no right of control over the manner in which the work is to be done, it is to be regarded as the contractor's own enterprise, and he, rather than the employer, is the proper party to be charged with the responsibility for preventing the risk, and administering and distributing it." Prosser and Keeton, The Law of Torts, § 71, 5th Ed. (1984). This rule of nonliability was first codified in Georgia in § 2905 of the Code of 1861, which provided that "[t]he employer is not responsible for torts committed by his employee when the employee exercises an independent business and in it is not subject to the immediate direction and control of the employer." The language of this section remained unchanged until the Civil Code of 1895. See Code of 1868, § 2911; the Code of 1873, § 2962; and the Code of 1882, § 2962.

At common law, certain exceptions to the rule of nonliability have been created in situations in which the reason and policy for the rule are inapplicable, see Prosser and Keeton, supra, § 71; Restatement of Torts 2d, supra, §§ 409-429; in fact, it has been said that " 'the rule [of nonliability] is now primarily important as a preamble to the catalog of its exceptions.' " Restatement of Torts 2d, § 409, Comment b (quoting *Pacific Fire Ins. Co. v. Kenny Boiler &c. Mfg. Co.*, 277 NW 226 (Minn. 1937)). It appears that the first such exceptions appeared in 1876 in the case of *Bower v. Peate*, 1 Q.B.D. 321 (1876). Restatement of Torts 2d, supra, § 469, Comment b.

In Georgia, exceptions to the rule of nonliability established by § 2905 of the Code of 1861 were first created by this court in *Atlanta &c. R. Co. v. Kimberly*, 87 Ga. 161 (13 SE 277) (1891). We recognized § 2905 (then § 2962 of the Code of 1882) as a general rule of nonliability, not as an immutable rule to be applied to all tort cases involving independent contractors. *Kimberly*, supra, 87 Ga. at 164-165. We then noted that many exceptions had been created to the rule under the common law, and proceeded to enumerate six of those exceptions, without purporting to make them exclusive. *Kimberly*, supra, 87 Ga. at 164-165. Subsequently, the General Assembly, acting in apparent agreement with our assessment in *Kimberly*, made two significant changes to our rule of nonliability in the Civil Code of 1895. First, the word "generally" was added to the rule of nonliability, so that it read that "[t]he employer *generally* is not responsible for torts committed by his employee when the employee exercises an independent business and in it is not subject to the immediate direction and control of the employer." Civil Code of 1895, § 3818. This language has been brought forward unchanged to our present Code, as OCGA § 51-2-4. Moreover, the General Assembly codified the six exceptions created in *Kimberly* in § 3819 of the Civil Code of 1895, without mention as to whether those exceptions were intended to be exhaustive. The origin of § 3819 was expressly attributed to our *Kimberly* decision. The language of § 3819 has also been brought forward to our present code, with only minor changes, in the form of OCGA § 51-2-5.

In determining whether the General Assembly intended that OCGA § 51-2-5 provide the exclusive exceptions to OCGA § 51-2-4, we begin with the language of the statutes themselves. *Mulkey v. State*, 252 Ga. 201 (2) (312 SE2d 601) (1984). OCGA § 51-2-4 provides that an employer *generally* is not liable for the torts of an independent contractor. The word "generally" has been defined as meaning "in disregard of specific instances and with regard to an overall picture." Webster's Third New International Dictionary, Unabridged (1961). Moreover, the facts that OCGA § 51-2-4 was originally codified from the common law, and that the word "generally" was added to this statute at a time when the common law was creating and ex-

panding exceptions to the rule of nonliability, demonstrate an intent on the part of the General Assembly that it be construed in view of the flexibility inherent in the common law. OCGA § 51-2-4 therefore cannot be said to preclude the creation of exceptions thereto.

Thus, we turn to OCGA § 51-2-5 to see if it evidences an intent on the part of the General Assembly that the exceptions listed therein are exclusive. The language of the statute itself is silent on this point, and is therefore somewhat ambiguous. However, we have no difficulty in ascertaining the intent of the General Assembly.

"All statutes are presumed to be enacted by the General Assembly with full knowledge of the existing condition of the law and with reference to it, and are therefore to be construed in connection and in harmony with the existing law, and as a part of a general and uniform system of jurisprudence, and their meaning and effect is to be determined in connection, not only with the common law and the Constitution, but also with reference to other statutes and decisions of the courts." *Plantation Pipe Line Co. v. City of Bremen*, 227 Ga. 1, 9 (178 SE2d 868) (1970). Accord *Hart v. Owens-Illinois, Inc.*, 250 Ga. 397, 400 (297 SE2d 462) (1982); *Price v. City of Snellville*, 253 Ga. 166, 167-168 (317 SE2d 834) (1984). When the General Assembly enacted § 3819 of the Civil Code of 1895, it obviously did so with an awareness of our decision in *Kimberly*, which did not purport to enumerate an exclusive list of exceptions to the general rule, but which instead relied upon exceptions which had been created under the common law. We construe this awareness of *Kimberly* and the expansion of exceptions to the general rule under the common law, especially in view of the lack of any indication by the General Assembly to the contrary, as evidencing an intent on the part of the General Assembly that OCGA § 51-2-5 not be an exhaustive list of the exceptions to OCGA § 51-2-4, and that OCGA § 51-2-4 stand as a general principle, which may be expanded as part of our general and uniform system of jurisprudence.

Moreover, this conclusion is mandated by the rule of construction that, when a statute is codified from a decision of this court, "[u]nless the language of the section imperatively requires a different construction, it will be presumed that the General Assembly in adopting it intended merely to adopt the principle of law announced in the decision from which it is taken." *Calhoun v. Little*, 106 Ga. 336, 343 (32 SE 86) (1898). Accord *Sinclair v. Friedlander*, 197 Ga. 797 (30 SE2d 398) (1944). In *Kimberly*, we noted six exceptions to the general rule of nonliability and did not purport to make them exclusive or to restrict other exceptions that might be justified. We therefore decline to construe OCGA § 51-2-5 as imposing such a restriction.

Any statements in the following cases to the effect that the exceptions of § 51-2-5 are exclusive are hereby disapproved. *Robbins*

*Home Improvement Co. v. Guthrie,* 213 Ga. 138, 140 (97 SE2d 153) (1957); *Dekle v. Southern Bell Telephone &c. Co.,* supra, 208 Ga. at 256.

2. Having determined that OCGA § 51-2-5 does not represent an exclusive list of exceptions to OCGA § 51-2-4, we now expressly approve the Court of Appeals' creation in *United States Shoe Corp. v. Jones,* supra, 149 Ga. App. 595, and in the instant cases of an additional exception to our general rule of nonliability. For the reasons stated in the Court of Appeals' opinion in these cases, *Peachtree-Cain Co. v. McBee,* supra, 170 Ga. App. at 39-40; see also *Dupree v. Piggly Wiggly Shop Rite Foods,* 542 SW2d 882, 888-889 (Tex. Civ. App. 1976); *Moore v. Target Stores, Inc.,* 571 P2d 1236 (9) (Okl. App. 1977); *Adams v. F. W. Woolworth Co.,* 257 NYS 776 (4) (Sup. Ct. 1932); *Zentko v. G. M. McKelvey Co.,* 88 NE2d 265 (5) (Ohio App. 1948), we agree with the imposition of liability upon property owners for the intentional torts committed by the personnel of an independent security agency, where the security agency was hired by the property owners to protect their premises. Moreover, as for the certiorari question, we agree with the Court of Appeals that the foregoing exception should apply to the arrangement employed by the Peachtree-Cain Company and the Peachtree-Harris Company in the instant cases. "As owners of the Peachtree Center complex that had undertaken to obtain security services, their duty to their invitees to provide responsible agents was personal and nondelegable, and thus it did not matter that the owners had an additional filter, i.e., the Peachtree Center Management Company, between themselves and the actual security guard. [Cit.] Because that duty was personal and nondelegable, a recovery based upon a breach of that duty would not constitute imposition of liability without fault. To hold that the appellants are immune from vicarious liability in these cases would, as noted above, present 'opportunities for gross injustice' which we will not here sanction. [Cit.]" *Peachtree-Cain Co. v. McBee,* 170 Ga. App., supra at 38, 39-40.

*Judgment affirmed. All the Justices concur, except Marshall, P. J., and Weltner, J., who dissent.*

WELTNER, Justice, dissenting.

1. I do not disagree with the majority's discussion in Division 1. The common law has developed over the centuries on a case-by-case approach. It has concerned itself with actual controversies between parties in court, rather than with the formulation of relational structures. The common law reflects the experience of the past through its respect for precedents. Yet it has always advanced new rules when circumstances change.

We could, therefore, conclude that these plaintiffs would not

have suffered their alleged injuries but for the selection by the owners of a management company, which in turn selected a security agency, which in turn hired agents, who were the alleged tortfeasors, as the chain of causality links the property owners to the plaintiffs. The question is whether it should be our policy to link the owners to the plaintiffs by *liability*, as well. See dissent, *McAuley v. Wills*, 251 Ga. 3, 7 (303 SE2d 258) (1983). That is a policy matter.

2. In my opinion, the majority makes an error in going beyond the scope of OCGA §§ 51-2-4 and 51-2-5. Consider the following suppositions:

(a) A householder telephones a pizzeria for home delivery. The deliveryman who fills the order intentionally runs over a dog. The dog's owner may recover from the householder.

(b) A homeowner retains a broker to sell his house. The broker hires a roofing company to replace a loose shingle. The roofer becomes engaged in an altercation with a neighbor and strikes him with a hammer. The homeowner is now liable for the injury.

(c) A bank hires an armored car company to transport cash. The driver of the armored car robs another bank. The first bank is now responsible for all damages arising out of the robbery.

We make a mistake to discard clear principles, based upon sound reasoning, which have been our law for many decades.

I am authorized to state that Presiding Justice Marshall joins in this dissent.

DECIDED MARCH 14, 1985.

*Greene, Buckley, DeRieux & Jones, Alfred B. Adams III, Schaune C. Griffin*, for appellants.

*Ragsdale, Beals, Hooper & Seigler, D. Kent Beals, L. Penn Spell, Jr., Cynthia B. Somervill*, for appellees (case nos. 40959 and 40960).

*Dwight L. Thomas*, for appellee (case no. 40961).