IN THE SUPREME COURT OF TEXAS






IN THE SUPREME COURT OF TEXAS
 
════════════
No. 04-0550
════════════
 
Fifth Club, Inc. and David A. 
West,
Petitioners,
 
v.
 
Roberto Ramirez,
Respondent
 
════════════════════════════════════════════════════
On Petition for Review from the
Court of Appeals for the Third District of 
Texas
════════════════════════════════════════════════════
 
 
Argued October 18, 
2005
 
 
 
            
Justice Green delivered the opinion of the Court, in which Chief Justice Jefferson, Justice O’Neill, Justice Brister, and Justice Medina joined, and in which 
Justice Hecht, Justice Wainwright, Justice Johnson, and Justice Willett joined as to Parts I, 
II, and III.
 
Justice Brister filed a concurring 
opinion, in which Chief Justice 
Jefferson joined.
 
Justice Willett filed a dissenting 
opinion, in which Justice Hecht, 
Justice Wainwright, and Justice Johnson joined.
 
 
In this case 
we revisit the rule that an employer is generally not liable for the acts of an 
independent contractor unless the employer exercises sufficient control over the 
details of the independent contractor’s work. See Lee Lewis Constr., Inc. v. 
Harrison, 70 S.W.3d 778, 783 (Tex. 2001). We do so to consider whether a 
“personal character exception” makes a business owner’s duties to the public 
nondelegable when contracting for private security services to protect its 
property. Because we do not recognize a personal character exception to the rule 
that an owner is not liable for the tortious acts of independent contractors, 
and because the evidence in this case is legally insufficient to support the 
jury’s negligence, malice, and exemplary damages findings against the owner, we 
reverse and render judgment in the owner’s favor. 
We do find 
legally sufficient evidence to support the future mental anguish damages award 
against the independent contractor and affirm the judgment as to the contractor. 

I. Facts and Procedural History
Fifth Club, 
Inc. operates an Austin nightclub known as Club Rodéo. David West, a certified 
peace officer, was hired as an independent contractor by Fifth Club to provide 
security at the nightclub.[1] Late one night, Roberto Ramirez 
arrived at Club Rodéo after several hours of drinking. Ramirez and his brother 
tried to enter the club but were denied admission by the doorman, allegedly 
because they were intoxicated. The doorman, an employee of Fifth Club, signaled 
to West and another parking lot security officer to escort Ramirez and his 
brother out of the club’s entrance. West allegedly grabbed Ramirez, slammed 
Ramirez’s head against a concrete wall, knocking him unconscious, and then 
struck him several times. The altercation resulted in multiple injuries to 
Ramirez, including a fractured skull. West moved Ramirez to the parking lot and 
placed him in handcuffs. The police arrived and arrested Ramirez, but a grand 
jury later declined to indict Ramirez on the charge of assaulting a police 
officer. Ramirez sued West and the club for damages.
Ramirez 
claims Fifth Club is vicariously liable for West’s conduct in spite of his 
independent contractor status because it controlled West’s security activities. 
Ramirez further claims that Fifth Club assumed a personal and nondelegable duty 
by contracting for security services to protect its property. Under Ramirez’s 
theory, the personal character of this duty, of hiring security personnel to 
protect business invitees and the premises, allows an employer to be liable for 
intentional acts of its independent contractor. 
A jury found 
Fifth Club vicariously liable for West’s conduct and for negligence and malice 
in its hiring of West. The jury awarded Ramirez actual damages that included 
future mental anguish damages and exemplary damages. The court of appeals 
affirmed.[2] 144 S.W.3d 574, 592 (Tex. App.–Austin 
2004, pet. granted).
Fifth Club 
contends there is legally insufficient evidence it retained sufficient control 
over West’s security activities to make it vicariously liable for his conduct. 
It also argues there is no personal character exception to the rule that 
insulates employers from the tortious acts of independent contractors. Fifth 
Club further asserts there is legally insufficient evidence to support the 
finding of malice in its hiring of West. And finally, both Fifth Club and West 
claim there is legally insufficient evidence to support the award of future 
mental anguish damages. We address each argument in turn.
II. Fifth Club’s Liability for West’s Conduct
A. Control
Generally, 
an employer has no duty to ensure that an independent contractor performs its 
work in a safe manner. See Lee Lewis Constr., Inc., 70 S.W.3d at 783. 
However, an employer can be held vicariously liable for the actions of an 
independent contractor if the employer retains some control over the manner in 
which the contractor performs the work that causes the damage. See id. In 
Redinger v. Living, Inc., we explained that
 
[o]ne who 
entrusts work to an independent contractor, but who retains the control of any 
part of the work, is subject to liability for physical harm to others for whose 
safety the employer owes a duty to exercise reasonable care, which is caused by 
his failure to exercise his control with reasonable care.
 
 
689 S.W.2d 
415, 418 (Tex. 1985) (quoting Restatement (Second) of Torts § 414 
(1977)). We held the general contractor liable for the actions of the 
independent contractor in Redinger because the general contractor 
retained “the power to direct the order in which the work was to be done and to 
forbid the work being done in a dangerous manner.” Id.; see Coastal 
Marine Serv. of Tex., Inc. v. Lawrence, 988 S.W.2d 223, 226 (Tex. 1999) 
(“The supervisory control must relate to the activity that actually caused the 
injury, and grant the owner at least the power to direct the order in which work 
is to be done or the power to forbid it being done in an unsafe manner.”). We 
further explained in Koch Refining Co. v. Chapa that a right of control 
requires more than
 
a general 
right to order the work stopped or resumed, to inspect its progress or to 
receive reports, to make suggestions or recommendations which need not 
necessarily be followed, or to prescribe alterations and deviations. Such a 
general right is usually reserved to employers, but it does not mean that the 
contractor is controlled as to his methods of work, or as to operative detail. 
There must be such a retention of a right of supervision that the contractor is 
not entirely free to do the work in his own way.
 
 
11 S.W.3d 153, 
155 (Tex. 1999) (quoting Restatement 
(Second) of Torts § 414 cmt. c (1965)). Employers can direct when 
and where an independent contractor does the work and can request information 
and reports about the work, but an employer may become liable for the 
independent contractor’s tortious acts only if the employer controls the details 
or methods of the independent contractor’s work to such an extent that the 
contractor cannot perform the work as it chooses. Id. at 155-56.
In this 
case, there was no evidence that Fifth Club gave more than general directions to 
West or that it retained the right to control the manner in which West performed 
his job. Fifth Club’s action in directing West to remove Ramirez from the 
premises did not rise to the level of directing how the work was to be performed 
or directing the safety of the performance because West retained the right to 
remove Ramirez by whatever method he chose. Fifth Club, therefore, cannot be 
held vicariously liable for West’s conduct.
B. Personal Character Exception
Ramirez 
argues that even if Fifth Club did not retain control over West’s actions, it 
can still be held vicariously liable because of a personal character exception 
to the general rule against liability of employers for the acts of independent 
contractors. According to Ramirez, the duty arising from an employer’s hiring of 
security personnel is personal in character, special only because of the nature 
of security work, and therefore an employer should be held liable for the 
tortious acts of the independent-contractor security personnel. 
We have 
never addressed this “personal character exception,” which first appeared in 
Texas in 1976. See Dupree v. Piggly Wiggly Shop Rite Foods, Inc., 542 
S.W.2d 882, 888-90 (Tex. Civ. App.–Corpus Christi 1976, writ ref’d n.r.e.). 
Since then, the exception has been mentioned in only three other opinions from 
Texas courts of appeals. See Duran v. Furr’s Supermarkets, Inc., 921 
S.W.2d 778, 787-88 (Tex. App.–El Paso 1996, writ denied); Ross v. Tex. One 
P’ship, 796 S.W.2d 206, 213 (Tex. App.–Dallas 1990), writ denied, 806 
S.W.2d 222 (Tex. 1991); Westhill Mgmt., Inc. v. Hefner, No. 
01‑87‑000617‑CV, 1988 WL 46399, at *3 (Tex. App.–Houston [1st Dist.] May 12, 
1988, writ denied)(not designated for publication). Under the exception, a 
premises owner can be held liable when an independent contractor’s work involves 
duties that are personal in character. See Duran, 921 S.W.2d at 789; 
Ross, 796 S.W.2d at 212-13. Texas courts have discussed the exception only 
in regards to security work performed by an independent contractor. See 
Duran, 921 S.W.2d at 787-88; Ross, 796 S.W.2d at 213; Westhill 
Mgmt., Inc., 1988 WL 46399, at *3. 
In 
Dupree, the Thirteenth Court of Appeals held that a supermarket could be 
vicariously liable for the work of its independent-contractor security 
guards:
 
[B]ecause 
of the “personal character” of duties owed to the public by one adopting 
measures to protect his property, owners and operators of enterprises cannot, by 
securing special personnel through an independent contractor for the purposes of 
protecting property, obtain immunity from liability for at least the intentional 
torts of the protecting agency or its employees. 
 
 
542 S.W.2d at 
888. The court cited opinions from other states in support of its holding. 
Id. (citing Adams v. F. W. Woolworth Co., 257 N.Y.S. 776, 781 
(N.Y. Sup. Ct. 1932); Hendricks v. Leslie Fay, Inc., 159 S.E.2d 362, 
366-68 (N.C. 1968); Szymanski v. Great Atl. & Pac. Tea Co., 74 N.E.2d 
205, 206-07 (Ohio Ct. App. 1947)). The court further held that when a store 
takes on security functions, the store cannot assign its duty to protect the 
public to the independent-contractor security personnel. Id. at 890.
The Eighth 
Court of Appeals cited Dupree when it reversed a summary judgment on the 
basis that a fact issue existed concerning application of the personal character 
exception to a similar situation involving the alleged intentional torts of a 
security guard at a supermarket. Duran, 921 S.W.2d at 788. In Westhill 
Management, Inc., the First Court of Appeals did not specifically mention 
the personal character exception, but it cited Dupree in holding a 
management company liable for the torts of its independent-contractor security 
guard. Westhill Mgmt., Inc., 1988 WL 46399, at *3. The Fifth Court of 
Appeals, however, refused to apply the personal character exception to the acts 
of a security guard because it found that the tortious conduct in that case was 
not intentional. Ross, 796 S.W.2d at 213-14. It therefore appears that 
the Texas courts that have considered the personal character exception have 
limited its application to the intentional acts of independent-contractor 
security guards. And before Fifth Club, only two Texas courts have 
actually applied the personal character exception to hold businesses vicariously 
liable for the actions of their independent-contractor security guards. See 
Dupree, 542 S.W.2d at 890; Duran, 921 S.W.2d at 788. Those cases have 
generally not provided an in-depth analysis of the personal character exception, 
so we look to other states for guidance in examining the exception’s origin and 
purpose. 
A number of 
states have adopted a personal character exception, or a rule that allows 
employers or premises owners to be held liable for the acts of independent 
contractors in the security context. See Robert A. Brazener, Annotation, 
Liability of One Contracting for Private Police or Security Service for Acts 
of Personnel Supplied, 38 A.L.R.3d 1332 (1971).[3] There appear to be at least two 
reasons why some states have adopted this exception: a nondelegable duty to keep 
premises safe, and public policy reasons relating to security work in general. 
Because these reasons are not applicable under Texas law, and have not been 
otherwise addressed by the Legislature, we are not persuaded that Texas should 
adopt such a rule.
Several 
states have relied on the nature of premises liability and the protection of 
premises to find liability for employers or business owners for the acts of 
their independent contractors.[4] Some states that have recognized the 
personal character exception have done so because the state law imposed a 
nondelegable or personal duty on the business owner to keep the premises safe, 
therefore making the business owner responsible for the acts of independent 
contractors hired to keep the premises safe. See FPI Atlanta, L.P. v. 
Seaton, 524 S.E.2d 524, 530-31 (Ga. Ct. App. 1999) (holding that landowners 
who were under a Georgia statute imposing a duty to keep their land safe for 
invitees could be held liable for the acts of security personnel hired to keep 
the land safe); see also Ga. Code 
Ann. § 51-3-1 (2000) (“Where an owner or occupier of land, by 
express or implied invitation, induces or leads others to come upon his premises 
for any lawful purpose, he is liable in damages to such persons for injuries 
caused by his failure to exercise ordinary care in keeping the premises and 
approaches safe.”); Webbier v. Thoroughbred Racing Protective Bureau, 
Inc., 254 A.2d 105, 289 (R.I. 1969) (holding that when owners were subject 
to a statutory duty to keep their patrons safe they could not escape liability 
for injuries to their racetrack patrons by hiring third parties to protect 
them). However, this case is not based on premises liability, but involves 
alleged vicarious liability for the acts of an independent contractor.
Several 
states addressing a personal character exception have done so based on a public 
policy that business owners should not have the benefit of surveillance or 
protection of their property without the penalties for unlawful activities by 
their independent contractors performing protective or security functions.[5] Those cases emphasize the possibility 
of abuse when a business owner is allowed to hire a detective agency or security 
guard to help protect its premises and its invitees, but cannot be held liable 
for the actions of the guards. See, e.g., Peachtree-Cain Co. v. 
McBee, 316 S.E.2d 9, 11 (Ga. Ct. App. 1984), aff’d, 327 S.E.2d 188, 
191 (Ga. 1985); Adams, 257 N.Y.S. at 781-82. Those cases also appear to 
identify security work as an exclusive category where vicarious liability can be 
present, regardless of the worker’s status as an independent contractor. See, 
e.g., Peachtree-Cain Co., 316 S.E.2d at 11; Adams, 257 N.Y.S. 
at 781-82. 
In Texas, 
business owners and employers alike are generally held liable for an independent 
contractor’s tortious acts only if the employer maintains detailed control over 
the independent contractor’s acts or if the work itself involves a nondelegable 
duty, whether inherently dangerous or statutorily prescribed. See Shell Oil 
Co. v. Khan, 138 S.W.3d 288, 292 (Tex. 2004); Lee Lewis Constr., 
Inc., 70 S.W.3d at 794 n.36 (inherently dangerous activities); MBank El 
Paso, N.A. v. Sanchez, 836 S.W.2d 151, 153 (Tex. 1992) (statutory 
imposition). A duty is nondelegable when it “is imposed by law on the basis of 
concerns for public safety, the party bearing the duty cannot escape it by 
delegating it to an independent contractor.” MBank El Paso, N.A., 836 
S.W.2d at 153. 
We have 
recognized a policy in favor of allowing employer liability when the independent 
contractor’s work is inherently dangerous: 
 
One who 
employs an independent contractor to do work involving a special danger to 
others which the employer knows or has reason to know to be inherent in or 
normal to the work, or which he contemplates or has reason to contemplate when 
making the contract, is subject to liability for physical harm caused to such 
others by the contractor’s failure to take reasonable precautions against such 
danger.
 
Lee Lewis 
Constr., Inc., 70 S.W.3d at 794 n.36 (quoting Restatement (Second) of Torts 
§ 427 (1965)).[6] Inherently dangerous activity stems 
from the activity itself rather than the manner of performance, so the 
responsibility for creating the danger cannot be shifted completely to the 
contractor performing the work, while ignoring the employer. See Restatement (Second) of Torts 
§§ 427, 427A. But Ramirez is basing his claim in this Court on what 
he views as the personal nature or character of security work; he has not argued 
that security work is inherently dangerous.
      
Some statutes impose certain nondelegable duties on businesses, making the 
business liable for acts violating the duty, even if the duty is being performed 
by an independent contractor. See MBank El Paso, N.A., 836 S.W.2d at 153 
(discussing section 9-503 of the Uniform Commercial Code); see also Konar v. 
PFL Life Ins. Co., 840 A.2d 1115, 1117-19 (R.I. 2004) (refusing to extend an 
exception for security work beyond statutorily-created duties mandating security 
or protection of the premises); Restatement (Second) of Torts 
§ 424 (“One who by statute or by administrative regulation is under 
a duty to provide specified safeguards or precautions for the safety of others 
is subject to liability to the others for whose protection the duty is imposed 
for harm caused by the failure of a contractor employed by him to provide such 
safeguards or precautions.”). However, the Legislature has not identified 
security work as carrying such nondelegable duties or carved out a special 
exception allowing business owners or employers to be held liable for the 
conduct of their independent-contractor security personnel. 
We decline 
to recognize a personal character exception to the rule that an employer is 
generally insulated from liability for the tortious acts of its independent 
contractors. Instead, whether an employer can be liable for security work 
performed by an independent contractor is determined by the facts of the case 
analyzed under the control exception and the nondelegable duty exception, which 
includes inherently dangerous activities and statutorily-imposed duties. In this 
case the plaintiff could, and did, sue the nightclub alleging direct liability 
for negligent hiring. Therefore, we see no reason to expand an employer’s 
liability for the acts of its independent contractor solely because the 
contractor is hired to perform security work, and we hold that there is no 
personal character exception to the general rule shielding an employer from 
liability for tortious acts of its independent contractors. 
We 
disapprove Dupree v. Piggly Wiggly Shop Rite Foods, Inc. and Duran v. 
Furr’s Supermarkets, Inc. to the extent they hold that the personal 
character of security work can cause an employer to be liable for the actions of 
their independent contractors absent control over the details of their work. 
See Dupree, 542 S.W.2d at 888-90; Duran, 921 S.W.2d at 787-88.
Because the 
character of West’s work for Fifth Club alone does not impose employer 
liability, we conclude Fifth Club is not vicariously liable to Ramirez.
III. Negligence and Malice in Hiring
Fifth Club 
further contends there is legally insufficient evidence to support the jury’s 
finding that it was negligent or malicious in hiring and retaining West. We 
agree. Ramirez argues that because Fifth Club did not perform a background check 
on West, did not require a job application, and allowed a third party to hire 
West, it was negligent in hiring him. Negligence in hiring requires that the 
employer’s “failure to investigate, screen, or supervise its [hirees] 
proximately caused the injuries the plaintiffs allege.” Doe v. Boys Club of 
Greater Dallas, Inc., 907 S.W.2d 472, 477 (Tex. 1995). 
There is no 
evidence to support the jury’s finding that Fifth Club’s lack of a background 
check of West caused the altercation or the injuries. As to negligence in 
hiring, the evidence indicates that even if Fifth Club had investigated West 
before hiring him, nothing would have been found that would cause a reasonable 
employer to not hire West. Cf. Doe, 907 S.W.2d at 477 (holding that the 
Boys Club did not breach any duty to screen or investigate its volunteers 
because the club would not have found anything in a volunteer’s background that 
would cause the club not to allow him to volunteer even if it had screened or 
investigated the volunteer). The evidence showed that West violated a 
requirement in the applicable peace officer manual by accepting employment at 
the club, and that his primary employer had reprimanded West for the use of a 
profanity to a member of the public. This evidence is not sufficient to have put 
Fifth Club on notice that hiring West would create a risk of harm to the public, 
even if Fifth Club had done a background check. Ramirez argues that if Fifth 
Club had known that West was violating his primary employer’s policies, it would 
not have hired him. But this statement, even if true, only shows that Fifth Club 
provided a condition—the hiring of West—that allowed for the altercation. It 
does not show foreseeability of harm to the public by West. Cf. id. at 
477-78. Therefore, there is no evidence to support the jury’s finding that Fifth 
Club was negligent, or malicious, in hiring West.
 Also, 
no evidence was presented that West was an incompetent or unfit security guard 
such that Fifth Club was negligent in retaining him after he was hired. Fifth 
Club hired West as a security guard to assist in protecting its property and 
patrons, a job specially suited to a trained peace officer. Cf. Hoechst 
Celanese Corp. v. Compton, 899 S.W.2d 215, 227-28 (Tex. App.–Houston [14th 
Dist.] 1994, writ denied) (holding that because peace officers are specifically 
trained to direct traffic, the employer was not negligent in hiring officers for 
that function because it failed to investigate the officers’ backgrounds). While 
Ramirez presented evidence that Fifth Club did not perform a background check or 
train West, West’s status as a certified peace officer made him fit for this 
type of work, and there was no conflicting evidence that he was unfit for the 
security position prior to the incident in question. 
Because 
there is no evidence to show that Fifth Club’s alleged negligence in hiring West 
could have caused Ramirez’s injury, we reverse the court of appeals’ judgment 
against Fifth Club on the negligence and malice issues, and we render a 
take-nothing judgment in favor of Fifth Club. 
IV. Future Mental Anguish Damages
West argues 
there is legally insufficient evidence to support the jury’s award of $20,000 in 
future mental anguish damages.[7] We disagree. In Parkway Co. v. 
Woodruff, this Court held that mental anguish awards will pass a legal 
sufficiency review if evidence is presented describing “the nature, duration, 
and severity of their mental anguish, thus establishing a substantial disruption 
in the plaintiffs’ daily routine.” 901 S.W.2d 434, 444 (Tex. 1995). Furthermore, 
“some types of disturbing or shocking injuries have been found sufficient to 
support an inference that the injury was accompanied by mental anguish.” 
Id. at 445; see also Brown v. Sullivan, 10 S.W. 288, 290 (Tex. 
1888) (“Where serious bodily injury is inflicted involving fractures, 
dislocations, etc., and results in protracted disability and confinement to bed, 
we know that some degree of physical and mental suffering is the necessary 
result.”). 
In this 
case, Ramirez and his wife testified that Ramirez continued to be depressed, 
humiliated, non-communicative, unable to sleep, and angry, continued to have 
headaches and nightmares, and that his daily activities and his relationships 
with his wife and daughter continued to be detrimentally affected almost two 
years after the incident. Ramirez also presented evidence of the severity of the 
intentional beating by West, including significant injuries to his head and 
body, his loss of consciousness, and his visits to the hospital. The evidence 
shows the nature of Ramirez’s mental anguish, its lasting duration, and the 
severity of his injuries, and is therefore legally sufficient to support future 
mental anguish damages. 
The dissent 
points to this Court’s opinions in Saenz and Parkway as support 
for its conclusion that the evidence in this case, as it was in those cases, is 
insufficient to support the jury’s award of future mental anguish damages. __ 
S.W.3d __ (citing Saenz v. Fid. & Guar. Ins. Underwriters, 925 S.W.2d 
607 (Tex. 1996); Parkway, 901 S.W.2d 434). But what distinguishes those 
cases is that neither of them, Saenz (wrongful inducement to settle a 
workers compensation claim) or Parkway (flooded home), involved a claim 
for personal injuries. See Saenz, 925 S.W.2d at 608-10; Parkway, 
901 S.W.2d at 436-37. We believe the severe beating received by Ramirez provided 
an adequate basis for the jury to reasonably conclude that he would continue to 
suffer substantial disruptions in his daily routine of the kind described in his 
and his wife’s testimony that he had already suffered in the past. The evidence 
in this case amounts to far more than worry that medical bills might not get 
paid, as in Saenz, or that someone is disturbed and upset, as in 
Parkway. See Saenz, 925 S.W.2d at 614; Parkway, 901 S.W.2d 
at 445. 
* 
* *
In summary, 
we reverse the court of appeals’ judgment against Fifth Club based on jury 
findings of vicarious liability negligence and malice in hiring, and we enter a 
take-nothing judgment in Fifth Club’s favor. We affirm the court of appeals’ 
judgment against West as to future mental anguish damages.
______________________________
PAUL W. 
GREEN
JUSTICE
 
OPINION DELIVERED: June 30, 
2006
 
 








[1] West was a campus peace officer for Huston‑Tillotson 
College at the time of the incident. He was sworn in as a commissioned peace 
officer at the college the month before the incident. West had attended a law 
enforcement academy before becoming a commissioned peace 
officer.

[2] Other members of Ramirez’s family were parties to the 
trial court and court of appeals proceedings regarding Fifth Club’s and another 
officer’s actions at the time of the incident, but those plaintiffs have not 
appealed to this Court. Also, although raised below, we do not address the issue 
of West’s official immunity as West and Fifth Club did not raise the issue in 
this Court.

[3] See also Malvo v. J.C. Penney Co., 512 P.2d 575, 
583 n.13 (Alaska 1973) (“[T]he duty owed to the public by a store owner seeking 
to protect his property may be nondelegable in certain circumstances.”); 
Tarzia v. Great Atl. & Pac. Tea Co., 727 A.2d 219, 225 (Conn. App. 
Ct. 1999) (“The possessor of premises who has invited persons to those premises 
for a business purpose cannot escape liability for a claimed breach of its duty 
to exercise reasonable care to keep the premises in a safe condition by hiring 
another to maintain the premises in a safe condition.”); Peachtree-Cain Co. 
v. McBee, 316 S.E.2d 9, 10-11 (Ga. Ct. App. 1984), aff’d, 327 S.E.2d 
188, 191 (Ga. 1985) (holding that it was proper to impose liability on property 
owners for the intentional torts of security personnel hired to protect their 
property because of the “opportunities for gross injustice”); Rockwell v. Sun 
Harbor Budget Suites, 925 P.2d 1175, 1179 (Nev. 1996) (“However, in the 
situation where a property owner hires security personnel to protect his or her 
premises and patrons, that property owner has a personal and nondelegable duty 
to provide responsible security personnel.”); Adams, 257 N.Y.S. at 781-82 
(holding that if a store owner receives the benefit of having a security guard 
do surveillance for criminal activity then he should also be subject to 
liability for false arrest of the persons the security guard tries to detain); 
Hendricks, 159 S.E.2d at 367-68 (holding that hiring security personnel 
to protect one’s property is a nondelegable and personal duty that subjects the 
employer to liability for the torts of its security personnel); 
Szymanski, 74 N.E.2d at 206-07 (same); Halliburton-Abbott Co. v. 
Hodge, 44 P.2d 122, 125-26 (Okla. 1935) (“The weight of authority seems to 
be that one may not employ or contract with a special agent or detective to 
ferret out the irregularities of his employees and then escape liability for 
malicious prosecution or false arrest on the ground that the agent is an 
independent contractor.”); Pryor v. Southbrook Mall Assocs., No. 
02A01-9709-CV-00217, 1998 WL 802005, at *4-5 (Tenn. Ct. App. Nov. 18, 1998) 
(“Thus, a business that contracts with an independent contractor to supply 
security guards will be liable for the guards’ intentional torts against 
customers and invitees of the place of business.”); W.T. Grant Co. v. 
Owens, 141 S.E. 860, 866 (Va. 1928) (“The owner of an operation or 
enterprise cannot, by securing through other special agents . . . obtain any 
immunity from liability for malicious prosecutions which such owner would not be 
equally entitled to if he himself directly selected and paid the agents and 
expressly retained the power of control and removal. When he undertakes these 
functions, his duties are personal and non‑assignable, and where he arranges for 
and accepts the service, he will not be permitted to say that the relationship 
of master and servant does not exist.”) (quoting Clinchfield Coal Corp. v. 
Redd, 96 S.E. 836, 840 (Va. 1918)). But see Mahon v. City of 
Bethlehem, 898 F. Supp. 310, 313-15 (E.D. Pa. 1995) (declining to adopt the 
exception because the Restatement does not adopt it and “Pennsylvania is 
reluctant to add new exceptions to the independent contractor shield.”). 


[4] See Malvo, 512 P.2d at 583 n.13; Tarzia, 
727 A.2d at 225; FPI Atlanta, L.P. v. Seaton, 524 S.E.2d 524, 530‑31 (Ga. 
Ct. App. 1999); Peachtree-Cain Co., 316 S.E.2d at 10-11; Rockwell, 
925 P.2d at 1179-80; Hendricks, 159 S.E.2d at 366; Webbier v. 
Thoroughbred Racing Protective Bureau, Inc., 254 A.2d 285, 289 (R.I. 1969); 
Pryor, 1998 WL 802005, at *4-5; W.T. Grant Co., 141 S.E. at 
866.

[5] See Peachtree-Cain Co., 316 S.E.2d at 
10-11; Rockwell, 925 P.2d at 1179-80; Adams, 257 N.Y.S. at 
781-82; Hendricks, 159 S.E.2d at 367-68; Szymanski, 74 N.E.2d at 
206-07; Halliburton-Abbott Co., 44 P.2d at 126; W.T. Grant Co., 
141 S.E. at 866; Clinchfield Coal Corp., 96 S.E. at 840. 


[6] The court of appeals in Dupree concluded, based 
on the specific facts of the case, that security work was not inherently 
dangerous. 542 S.W.2d at 888. 

[7] Because we hold that Fifth Club is not vicariously or 
directly liable for damages, we do not address its argument on the damages 
issue.